[No. A075474. First Dist., Div. Two. Dec. 5, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
OLLIE JEROME HALL, Defendant and Appellant.

[No. A077187. First Dist., Div. Two. Dec. 5, 1997.]

In re OLLIE JEROME HALL on Habeas Corpus.

**COUNSEL**

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Michael E. Banister, Christina V. Kuo and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUVOLO, J.**—Ollie Jerome Hall appeals from the judgment ordering execution of a previously imposed six-year prison term based upon his negotiated plea of no contest to a charge of grand theft (Pen. Code, § 487) with enhancements for three prior prison terms (Pen. Code, § 667, subd. (b)). Appellant filed a companion petition for writ of habeas corpus that was consolidated with the appeal. The habeas petition is essentially a repetition of appellant's opening brief and therefore will not be addressed separately.

The principal issue presented is whether the court had jurisdiction to order execution of appellant's sentence under Penal Code section 1203.2a.[1] Appellant also contends the record does not show the sentencing court was aware of its discretion to modify the upper term, and that the imposition of a $3,000 restitution fine was improper. For reasons set forth below, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with the theft of clothing from a store in Humboldt County. A security guard observed appellant take off his old hat and jacket and put on a new hat and jacket. In the shoe department, appellant took off his old shoes, and put on a new pair of L.A. Gear shoes. Appellant took a shirt off a hanger, set it on a stack of Levi's, picked up the stack, and walked out of the store. Appellant dropped the merchandise and ran when he saw the security guard coming after him; the guard caught and held him for the police.

Appellant entered a negotiated plea of no contest to grand theft on the condition that he would receive a six-year prison term, execution of which would be suspended and he would be placed on probation for five years conditioned on successful completion of the Delancey Street Program. The probation report recommended, among other things, imposition of a $3,000 restitution fine to be stayed pending appellant's successful completion of probation. The $3,000 fine was specifically mentioned by the court at the time of sentencing.

When appellant was sentenced on February 7, 1994, he had three months to serve on a parole revocation term before he could enter the Delancey

---

[1] Unless otherwise noted, all statutory references hereafter are to the Penal Code.

Street Program. When released from prison in May 1994, appellant failed to report to the probation department or to enroll in the Delancey Street Program. Appellant was at large from May until October 1994, when he was arrested and returned to prison. These facts were recited in a "Notice of Probation Violation and Court Action," which was filed by the Humboldt County Probation Department on December 1, 1994. With respect to appellant's imprisonment, the notice said: "[Appellant] was arrested by State Parole Agent L. Watkins on October 28, 1994, while hospitalized for gun[]shot wounds and gave false identification to a peace officer. He was transferred to the California Institut[e] for Men at Chino the same date." Based on this notice, the court summarily revoked probation and issued a warrant on the same date.

On September 20, 1995, the probation officer filed a "First Amended Notice of Probation Violation and Court Action," which listed an additional violation: "On September 11, 1995, [appellant] pled guilty to a new violation of 487(a) . . . resulting from an arrest in Long Beach, California on August 30, 1995." The court again summarily revoked probation and issued an arrest warrant for appellant.

On April 22, 1996, appellant filed a motion in the superior court to dismiss for failure to comply with section 1381. The motion was accompanied by appellant's declaration stating that he was "a prisoner confined at Corcoran State Prison" and that on September 15, 1995, he had served a demand for hearing and trial pursuant to section 1381 on the Humboldt County District Attorney. A copy of the probation report extract was attached.[2] The matter was on calendar on May 2 without appellant's presence since he was in prison. The public defender was appointed to represent appellant. The prosecutor denied that his office had received a 1381 demand. On May 28 the court signed an order to transport appellant to court and continued the matter.

On June 13, 1996, appellant was served with a copy of the "First Amended Notice of Probation Violation and Court Action" and denied the allegations. On June 17, the district attorney filed opposition to appellant's motion to dismiss, arguing that section 1381 was inapplicable and noting that if the court deemed appellant's motion to dismiss a request to be sentenced under section 1203.2a, then appellant must be sentenced within 60 days of April 22, 1996 (i.e., by June 21, 1996).

The contested probation revocation hearing was held on June 21, 1996. The court determined that the triggering requirements of section 1203.2a had

---

[2]Appellant admits this was an inappropriate demand because section 1381 applies to prisoners who have not been tried or sentenced, whereas appellant was sentenced on February 7, 1994, although execution thereof was stayed.

not been met by the filing of the original notice of probation violation or by the filing of the first amended notice of violation. The court sustained all allegations of violation and referred appellant to the probation officer for a supplemental report.

On June 25, 1996, appellant filed a motion to reconsider violation of probation. The district attorney filed opposition on July 1, 1996. Appellant filed a supplemental brief on July 10, 1996, citing the then recent case of *In re Hoddinott* (1996) 12 Cal.4th 992 [50 Cal.Rptr.2d 706, 911 P.2d 1381]. On July 12, the court denied the motion to reconsider on the merits.

On July 30, 1996, the court lifted the stay of execution and ordered the previously imposed six-year term executed to run concurrently with any time then being served. The stay on the previously imposed $3,000 restitution fine was also lifted.

## ARGUMENT

### *Jurisdiction Under Section 1203.2a*

■ Appellant contends the court lost jurisdiction under section 1203.2a to order execution of his sentence.[3] ■ Section 1203.2a permits a defendant, who has been released on probation and thereafter committed to prison

---

[3]Penal Code section 1203.2a provides as follows:

"If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel.

"The probation officer may, upon learning of the defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his or her counsel, or the warden or duly authorized representative of the prison in which the defendant is confined, report such commitment to the court which released him or her on probation.

"Upon being informed by the probation officer of the defendant's confinement, or upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in the case in which he or she was released on probation in his or her absence and without the presence of counsel to represent him or her, the court shall impose sentence and issue its commitment or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was

for another offense, to request the trial court that granted probation to revoke probation and order execution of sentence. "The purpose of section 1203.2a is to prevent a defendant from inadvertently being denied the benefit of Penal Code section 669 that sentences be concurrent unless the court exercises its discretion to order that a subsequent sentence be consecutive to a prior sentence. Before section 1203.2a was enacted, if the court that granted probation was unaware of a defendant's subsequent incarceration for another offense and had therefore failed to revoke probation, the defendant might serve the entire term for the other offense but still be subject, on revocation of probation, to serving the term for the offense for which he had been given probation." (*In re White* (1969) 1 Cal.3d 207, 211 [81 Cal.Rptr. 780, 460 P.2d 980], fn. omitted.)

 "[S]ection 1203.2a provides for 3 distinct jurisdictional clocks: (1) the probation officer has 30 days from the receipt of written notice of defendant's subsequent commitment [for a subsequent offense] within which to notify the probation-granting court (2d par.); (2) the court has 30 days from the receipt of a valid, formal request from defendant within which to impose sentence if sentence has not previously been imposed (3d par., 4th sentence); and (3) the court has 60 days from the receipt of notice of the confinement to order execution of sentence (or make other final order) if sentence has previously been imposed (3d par., 3d sentence). Failure to comply with any one of these three time limits divests the court of any remaining jurisdiction. (5th par.)." (*In re Hoddinott, supra,* 12 Cal.4th at p. 999.)

 Appellant challenges the court's jurisdiction to order execution of the previously imposed sentence. He contends the 60-day jurisdictional

---

made. If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence.

"Upon imposition of sentence hereunder the commitment shall be dated as of the date upon which probation was granted. If the defendant is then in a state prison for an offense committed subsequent to the one upon which he or she has been on probation, the term of imprisonment of such defendant under a commitment issued hereunder shall commence upon the date which defendant was delivered to prison under commitment for his or her subsequent offense. Any terms ordered to be served consecutively shall be served as otherwise provided by law.

"In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

clock was triggered by three different events: (1) the notice of probation violation filed on December 1, 1994; (2) the amended notice of probation violation filed on September 20, 1995; and (3) the motion to dismiss filed by appellant on April 22, 1996, stating that he was confined at Corcoran State Prison. Appellant also claims the court lost jurisdiction under section 1203.2a when the probation officer failed to notify him of the filing of the notice to revoke probation and the summary revocation of probation.

Before we address these claims in order, we begin by observing that "[l]oss of jurisdiction over a convicted felon is a severe sanction which courts have been unwilling to apply unless the sentencing court's jurisdiction has been ousted by strict compliance with the statute. [Citations.]" (*People* v. *Como* (1975) 49 Cal.App.3d 604, 609 [49 Cal.App.3d 604, 123 Cal.Rptr. 86]; see also *Pompi* v. *Superior Court* (1982) 139 Cal.App.3d 503, 507 [189 Cal.Rptr. 52]; *People* v. *Davidson* (1972) 25 Cal.App.3d 79, 84 [101 Cal.Rptr. 494]; *In re Brown* (1971) 19 Cal.App.3d 659, 666 [97 Cal.Rptr. 71] disapproved on other grounds in *In re Hoddinott, supra,* 12 Cal.4th 992, 1005.) In determining whether there has been strict compliance with the requirements of the statute, we start with the language of the statute itself. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Principles of statutory construction direct us to construe the words of a statute in context, keeping in mind the purpose of the statute. (See *id.* at p. 1387.)

### *December 1, 1994, Notice of Probation Violation*

The notice of alleged violations stated in pertinent part: "[Appellant] was arrested by State Parole Agent L. Watkins on October 28, 1994, while hospitalized for gun[]shot wounds and gave false identification to a peace officer. He was transferred to the California Institut[e] for Men at Chino the same date." At the contested probation revocation hearing, the trial court concluded the notice of probation violation was not the sort of notice that would trigger the 60-day clock under section 1203.2a. The court explained: "I have some real problems with the type of notice you're referencing in a probation violation or petition to revoke probation as being the type of notice envisioned by the statute. [¶] We go through notices of probation violation and petition[s] to revoke all the time. . . . I peruse [them]. But it's not in any great detail. It's to see whether or not the statutory requirements are met. And I don't even particularly look at the grounds that are set forth in determining whether or not to go ahead and sign it and set bail or do whatever they want. [¶] I think the notice that's envisioned by the statute would be notice that is referencing the statute. . . ."

Appellant maintains this notice was sufficient to trigger the 60-day clock because it informed the court he had been returned to state prison.

Appellant argues that the probation officer's action in filing the notice of probation violation fell within the second paragraph of section 1203.2a, which states the "probation officer *may*, upon learning of the defendant's imprisonment, . . . report such commitment to the court . . . ." (Italics added.) That notice, according to appellant, commences the 60-day clock under the Supreme Court's interpretation of section 1203.2a in *Hoddinott*.

Paragraph two of section 1203.2a provides that "[t]he probation officer may, upon learning of the defendant's imprisonment, . . . report such commitment to the court which released him or her on probation." Under paragraph three, if sentence has previously been imposed, the court is then required to "issue its commitment" upon being "informed by the probation officer of the defendant's confinement, . . . ." Paragraph three further states: "If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over appellant in the case within 60 days after being notified of the confinement."

Appellant contends the notification of his imprisonment, even without specific reference to incarceration due to a subsequent offense, is sufficient notice to commence the 60-day time limit in section 1203.2a. In support of his claim, he notes it has long been held that section 1203.2a applies even when the imprisonment is for a parole violation rather than for a new conviction. (*In re Klein* (1961) 197 Cal.App.2d 58 [17 Cal.Rptr. 71].)

In *In re Klein*, Justice Tobriner, speaking for Division One of this court, reviewed the statutory language and concluded that a defendant imprisoned for a parole violation has been "*committed* to a prison" within the language of section 1203.2a because there is no indication the Legislature intended the word "commitment" to refer solely to judicial action. (197 Cal.App.2d at p. 61, original italics.) Justice Tobriner found "no distinction between a commitment for parole violation and a commitment after judgment either in the sense of the word commitment or in the legislative purpose expressed in the section." (*Id.* at p. 62.)

Respondent questions the continuing validity of *In re Klein* in light of the statutory change from the Indeterminate Sentencing Law (ISL) to the Determinate Sentencing Act of 1976 (DSA). When probation was revoked under the ISL, appellant was returned to prison to continue serving his previously imposed indeterminate sentence. "Parole formerly was considered a part of the term served in confinement. Under the present scheme, however, the parole period is imposed *separately* from the term of imprisonment." (*In re Wilson* (1981) 30 Cal.3d 438, 442 [179 Cal.Rptr. 207, 637 P.2d 674],

original italics.) Thus, under the ISL, notification of reincarceration for a parole violation was the functional equivalent of imposition of sentence.

Respondent argues further that because under the DSA the parole revocation term generally is limited to a maximum term of 12 months (§ 3057, subd. (a)), the brevity of the term makes it comparable to an incarceration for a misdemeanor conviction. In *People* v. *Blanchard* (1996) 42 Cal.App.4th 1842 [50 Cal.Rptr.2d 614], misdemeanor sentences were determined not to fall within section 1203.2a. Reliance on *Blanchard*, however, is misplaced because the decision was actually based upon a conclusion that section 1203.2a's reference to "prison" did not include county jail. Although respondent may be correct in asserting that the differences between the ISL and DSA warrant reconsideration of the applicability of section 1203.2a to imprisonment for parole violations, such reconsideration, in our view, is a matter best left to legislative action.

In determining the meaning of the terms "commitment" and "confinement" in paragraphs two and three, we look to the beginning of the statute, which defines its scope, and places these two terms in the proper context. The defining statement is contained in the first sentence of section 1203.2a, which provides in pertinent part: "If any defendant who has been released on probation, is committed to a prison in this state or another state *for another offense*, . . ." (Italics added.) This statement tells us that section 1203.2a applies to a defendant who has been released on probation and who then is committed to prison *for another offense*. The balance of the statute describes specific mechanisms to invoke the statutory protections.

Considering the context of the statute and its purpose, we conclude that the notice of imprisonment or confinement referred to in the second and third paragraphs of section 1203.2a must inform the court that a defendant has been committed to *prison for another offense*. It is not sufficient for the notice to state merely that the defendant has been transferred to prison since, under modern penal practices as sanctioned by the Penal Code, a defendant may be transferred to prison for reasons other than commitment for another offense. (See, e.g., § 1203.03 [order placing defendant in diagnostic facility of Department of Corrections].)

Therefore, the "Notice of Probation Violation and Court Action" filed on December 1, 1994, was not sufficient to trigger the 60-day jurisdictional clock. It said only that appellant had been transferred to the California Institute for Men at Chino. It did not inform the court that appellant had been committed to prison for another offense. Thus, under the rule of strict construction applicable to this situation, the notice was insufficient.

*Amended Notice of Probation Violation*

The amended notice of probation violation was filed on September 20, 1995. It repeated the allegations of the previous notice and added the following allegation: "On September 11, 1995, [appellant] pled guilty to a new violation of 487(a) . . . resulting from an arrest in Long Beach, California on August 30, 1995."

For the reasons discussed in connection with the first notice of probation violation, this notice was insufficient to trigger the 60-day jurisdictional clock of the third paragraph of section 1203.2a. It did not inform the court that appellant had been committed to prison for another offense and thus did not qualify under the statute.

*Motion to Dismiss Filed on April 22, 1996*

On April 22, 1996, appellant filed a motion to dismiss in the Humboldt County Superior Court for failure to comply with section 1381. The motion was accompanied by a declaration by appellant stating that he was "a prisoner confined at Corcoran State Prison" and that on September 15, 1995, he had served a demand for hearing and trial pursuant to section 1381 on the Humboldt County District Attorney. As previously mentioned, appellant concedes the demand was inappropriate under section 1381 because that statute applies only to defendants who have not been tried or sentenced. (See fn. 2, *ante*.)

Under the principles discussed in connection with the first notice of parole violation, it is apparent that appellant's motion did not trigger the court's 60-day jurisdictional clock. To qualify under paragraph three of section 1203.2a, the notice must be from the probation officer or from the warden or other duly authorized representative of any prison. There is no provision for notice from a defendant to the court. Under the rule requiring strict compliance with the statute, we find appellant's April 22 motion insufficient to invoke the 60-day jurisdictional time limit set forth in the third paragraph of section 1203.2a.

*Failure to Notify Appellant of Revocation Proceedings*

Appellant contends the court lost jurisdiction over him when the probation officer failed to notify him of the filing of the notice to revoke probation and the summary revocation of probation. He relies on *People* v. *Johnson* (1987) 195 Cal.App.3d 510 [240 Cal.Rptr. 748] disapproved on other grounds in *In re Hoddinott, supra*, 12 Cal.4th 992, 1005, a case

involving a probationer whose sentence had been suspended and who was subsequently committed to prison in Michigan for another offense. The defendant in *Johnson* claimed the trial court lacked jurisdiction to revoke his probation because the requirements of sections 1203.2a and 1381 had not been met. Section 1381 applies to persons imprisoned on a new offense who have other charges pending for which they have not yet been tried or sentenced, and provides a method for them to assert a right to prompt disposition of the other charges. Although not mandated by the statutory language, cases have interpreted section 1381 as requiring authorities to notify prisoners of pending proceedings so that they may invoke their right to request prompt disposition of those pending proceedings. (*In re Mugica* (1968) 69 Cal.2d 516, 523-524 [72 Cal.Rptr. 645, 446 P.2d 525]; *People* v. *Johnson, supra,* 195 Cal.App.3d at p. 515.)

The *Johnson* court noted that section 1381 did not apply to persons imprisoned out of state and thus was inapplicable to the defendant. It nevertheless decided that notification of charges under section 1381 should similarly apply to an unsentenced probationer under section 1203.2a. (*People* v. *Johnson, supra,* 195 Cal.App.3d at p. 515.) Since the defendant was not given notice of the pending probation revocation proceedings, the *Johnson* court held the trial court lacked jurisdiction to revoke the defendant's probation. (*Id.* at pp. 515-516.)

*Johnson* is factually distinguishable in that the case involved a probationer who had not yet been sentenced, whereas sentence had been imposed in the present case. While an unsentenced probationer facing probation revocation may request prompt sentencing for the pending case, a probationer, like appellant here, who has already been sentenced but who has had the execution of that sentence suspended, has no right under section 1203.2a to make such a request for sentencing. (Cf. *id.* 2d & 3d pars.) Therefore, the notice which was required in *Johnson* in order to effectuate the probationer's right to request sentencing is unnecessary where that sentencing has already taken place.

### *Court's Discretion to Modify Upper Term*

█ Appellant contends the record does not demonstrate the sentencing court was aware of its discretion to modify the upper term when it ordered the sentence executed. As previously mentioned, appellant was placed on probation as part of a negotiated sentence in which he was to be given the upper term of three years plus another three years in enhancements in return for placement on probation so he could participate in the Delancey Street Program. Upon revoking probation, the court ordered execution of the

previously imposed six-year prison term. There was no discussion of modifying the sentence.

Respondent argues appellant waived the issue by failing to request a lesser sentence at the sentencing hearing. (See *People* v. *Scott* (1994) 9 Cal.4th 331, 350-356 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People* v. *Zuniga* (1996) 46 Cal.App.4th 81, 84 [53 Cal.Rptr.2d 557]; *People* v. *Gibson* (1994) 27 Cal.App.4th 1466, 1468 [33 Cal.Rptr.2d 217].) Appellant counters that the case law at that time indicated the court had no authority to modify a previously imposed sentence and that he should therefore be excused from the waiver doctrine. (See *People* v. *Chagolla* (1984) 151 Cal.App.3d 1045 [199 Cal.Rptr. 181]; *People* v. *Colado* (1995) 32 Cal.App.4th 260 [38 Cal.Rptr.2d 57].)

We need not decide the waiver question because appellant's argument fails on the merits. Appellant argues that *People* v. *Chagolla, supra,* 151 Cal.App.3d 1045 was impliedly overruled by *People* v. *Karaman* (1992) 4 Cal.4th 335 [14 Cal.Rptr.2d 801, 842 P.2d 100], which held that a trial court retained the power to modify the defendant's sentence in a manner more favorable to the defendant, where the court had imposed a state prison sentence but ordered a brief stay of execution of judgment to permit the defendant to put his personal affairs in order. The California Supreme Court recently held to the contrary.

In *People* v. *Howard* (1997) 16 Cal.4th 1081 [68 Cal.Rptr.2d 870, 946 P.2d 828], the court addressed this very question and held that *Karaman*'s narrow holding should not extend to probation revocation situations. "Unlike the situation in *Karaman,* to which common law rules applied regarding retention of sentencing jurisdiction over the defendant, the authority to grant probation and to suspend imposition or execution of sentence is wholly statutory. [Citations.]" (*Id.* at p. 1092.) "*Karaman*'s language, creating a common law exception to the minute-entry rule, did not change the long-standing *statutory* rule that, when a court revokes probation, canceling the suspension of a previously imposed sentence necessarily puts that sentence into 'full force and effect.' (§ 1203.2, subd. (c).)" (*Id.* at p. 1093, original italics.) The court summarized its holding as follows: "[I]f the court has actually imposed sentence, and the defendant has begun a probation term representing acceptance of that sentence, then the court has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage." (*Id.* at p. 1095.)

### Propriety of $3,000 Restitution Fine

■ Appellant states that at the time he entered his plea the court advised him only that there was a mandatory Government Code fine, which at that

time was "not less than $200." (Former Gov. Code, § 13967, subd. (a), now Pen. Code, § 1202.4, subd. (b).) The probation officer recommended a $3,000 fine, to be stayed pending completion of probation. The court imposed such a fine and stayed it. Appellant argues the fine was improper because it violated the plea bargain and was arbitrary.

Respondent maintains the record fails to show the court erred. Although the reporter's transcript of the entry of plea is not presently part of the record on appeal, the clerk's minutes state appellant "[was] advised . . . of the mandatory [G]overnment [C]ode fine." In the absence of any indication to the contrary, we presume the court made the appropriate advisements. (Evid. Code, § 664; see *People* v. *Mack* (1986) 178 Cal.App.3d 1026, 1032 [224 Cal.Rptr. 208].)

Appellant also claims the $3,000 restitution fine was improper because it was imposed without regard to his ability to pay. Appellant has waived the point by failing to raise the objection in the trial court at any time. (*People* v. *Forshay* (1995) 39 Cal.App.4th 686, 689-690 [46 Cal.Rptr.2d 116]; *People* v. *Gibson*, *supra*, 27 Cal.App.4th 1466, 1468-1469.)

DISPOSITION

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Haerle, Acting P. J., and Lambden, J., concurred.

A petition for a rehearing was denied January 5, 1998, and appellant's petition for review by the Supreme Court was denied March 18, 1998.